# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CALVIN WESTERFIELD,

        Petitioner,                      Case Number: 2:10-CV-13189

v.                                            HONORABLE MARIANNE O. BATTANI

LLOYD RAPELJE,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Calvin Westerfield, through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Westerfield challenges his conviction for second-degree murder on the grounds that his no contest plea was involuntary and was judicially coerced by threat of retaliatory sentencing; the prosecutor breached the plea agreement; he received ineffective assistance of counsel; and his sentence was based upon inaccurate information. Respondent argues that the claims are meritless and that a portion of his claim that his guilty plea was involuntary is procedurally defaulted. The Court denies the petition.

## I. Background

Petitioner was charged in Kent County Circuit Court with open murder, felony murder and being a third habitual offender. The charges arose from the killing of Diamond Holt. At the preliminary examination, the medical examiner testified that Holt's

cause of death was asphyxia by compression of the neck with contributory causes of blunt and sharp force injuries to the head. On December 28, 2006, Petitioner pleaded no contest to second-degree murder pursuant to a plea agreement. In exchange for Petitioner's plea, the prosecutor dismissed the first-degree murder and habitual offender charges and recommended that the minimum sentence not exceed 20 years. On February 13, 2007, Petitioner was sentenced to 20 to 60 years in prison.

Petitioner filed a motion to set aside his plea, which the trial court denied. Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. He raised these claims:

  I.    Defendant's plea of no contest was vitiated because it was non-voluntary and also entered in reliance on unfulfilled promises. The plea also violated defendant's right to due process of law and right against self-incrimination.

  II.   Defendant's plea of no contest must be set aside because the trial court could not establish an independent factual basis. As such it constitutes an involuntary plea in violation of defendant's Fifth Amendment right against self-incrimination and right to due process of law.

  III.  Defendant was entitled to the benefit of his sentence bargain, and has the option of setting his plea aside or enforcement of the bargain, as a remedy for the violation of his due process rights.

  IV.   Defendant's conviction is vitiated because he was deprived of the effective assistance of counsel in violation of his Sixth Amendment rights.

  V.    The trial court abused its discretion and violated defendant's right to due process of law by allowing an improper amendment of the information and by granting the prosecutor's motion to introduce other bad acts under M.R.E. 404(B).

  VI.   Defendant is entitled to resentencing because the trial court violated

>       defendant's right to due process of law and abused its discretion in scoring
>       offense variables.

The Michigan Court of Appeals denied leave to appeal. *People v. Westerfield*, No. 279635 (Mich. Ct. App. Sept. 13, 2007). Petitioner's application for leave to appeal was denied by the Michigan Supreme Court. *People v. Westerfield*, 480 Mich. 1011 (Mich. Jan. 8, 2008).

On March 17, 2008, Petitioner filed a motion for relief from judgment in the trial court, raising these claims:

> I.   Defendant-appellant was denied his state and federal constitutional rights to due process where his Fifth, Sixth, and Fourteenth Amendment rights were violated.

The trial court denied the motion. *People v. Westerfield*, No. 06-02695 (Kent County Cir. Ct. Aug. 26, 2008). Petitioner filed applications for leave to appeal the denial of his motion in the Michigan Court of Appeals and the Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Westerfield*, No. 288031 (Mich. Ct. App. Dec. 23, 2008); *People v. Westerfield*, No. 138143 (Mich. Aug. 6, 2009).

Petitioner filed the pending habeas corpus petition on August 11, 2010. He raises these claims:

> I.   Defendant was denied his state and federal constitutional rights to due process where his Fifth, Sixth, and Fourteenth Amendment rights were violated as a result of judicial intervention during plea negotiations that coerced him into an involuntary plea, which otherwise would have not been entered.
>
> II.  Prosecutor's misconduct in informing defendant that "intent to kill was not

3

an element of second-degree murder," in order to induce defendant into pleading no-contest caused a violation to defendant's due process of law and both his federal and constitutional rights to a trial, rendering plea unknowing and involuntary.

III. Defendant was deprived the effective assistance of counsel on leave to appeal when appellate counsel failed, for no apparent strategic reason, to raise issues that were both "obvious and significant," thus violating defendant's Sixth Amendment right to counsel.

The trial court denied the motion. *People v. Westerfield*, No. 06-02695 (Kent County Cir. Ct. Aug. 26, 2008). Petitioner filed applications for leave to appeal the denial of his motion in the Michigan Court of Appeals and the Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Westerfield*, No. 288031 (Mich. Ct. App. Dec. 23, 2008); *People v. Westerfield*, No. 138143 (Mich. Aug. 6, 2009).

Petitioner then filed the pending habeas petition. He raises these claims:

I. Petitioner was denied due process where his plea was involuntary, based upon misrepresentation and misunderstanding of the terms; Petitioner was also denied due process where the trial court refused to set aside the plea.

II. Petitioner was denied due process where his plea was judicially coerced and involved threats of retaliatory sentencing.

III. Petitioner was denied due process where prosecutor did not obtain dismissal of Wisconsin charges; Petitioner was also denied due process where the trial court refused to either enforce or set aside the plea.

IV. Ineffective assistance of counsel prejudiced Petitioner.

V. Petitioner was denied due process where sentencing findings were not supported by the record and based upon inaccurate information.

4

## II.  Standard

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

#### A. Voluntariness of Plea

Petitioner alleges that his guilty plea was involuntary because the terms of the plea agreement were misrepresented and misunderstood. Specifically, Petitioner argues that he pleaded guilty based upon the understanding that he would receive a maximum sentence of 20 years (not a maximum-minimum sentence of 20 years) and that pending assault charges in Wisconsin would be dismissed. Petitioner further alleges that his plea was coerced by the trial judge's improper participation in plea negotiations and threats of retaliatory sentencing.

To be valid, a guilty plea must be voluntarily and intelligently made. *Brady v. U.S.*, 397 U.S. 742, 748-49 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757. "[T]he decision whether or not to plead guilty ultimately rests with the client." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002).

First, Petitioner argues that he pleaded guilty with the understanding that his maximum sentence (rather than his maximum minimum sentence) would be 20 years. Respondent argues that this claim is procedurally barred because it is unexhausted.

A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A prisoner's "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v.*

8

*Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Prather v. Reese*, 822 F.2d 1418, 1420 (holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n.3.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim "within 'one complete round of the State's established appellate review process.'" *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. Sept. 6, 2012) (quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004)); 28 U.S.C. § 2254(b). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n.3.

Petitioner raised a claim that his guilty plea was involuntary in state court, but not on the basis raised here. In state court, he argued that his plea was involuntary because it was based upon sentencing guidelines that had been erroneously calculated. Petitioner believed his sentencing guidelines would be 225 to 375 months, but, after his attorney

9

successfully argued for a reduction in the scoring of certain offense variables, his guidelines range was 162 to 270 months. Therefore, he argued on direct appeal, that his plea was based upon an understanding that he would be sentenced at the low end of the guidelines, but, after the recalculation, 20 years was no longer at the low end of the guidelines. Petitioner did not argue on direct appeal or collateral review that he believed 20 years would be his maximum sentence. Thus, this claim is unexhausted because he has not presented it within one complete round of Michigan's established review process. No state-court remedy is available to Petitioner because he already filed a motion for relief from judgment and may not file a successive motion. See M.C.R. 6.502(G)(1) ("one and only one motion for relief from judgment may be filed with regard to a conviction"). Where a habeas petitioner fails to exhaust his claims in state court, but is barred from doing so "his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). Rather, the petitioner must show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal or a fundamental miscarriage of justice. *Id.*

Petitioner fails to assert cause for the procedural default. Thus, his claims are barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995). The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a

petitioner's innocence. *Id*. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is procedurally barred.

Petitioner also claims that his plea was involuntary because it was based upon his understanding that assault charges pending in Wisconsin would be dismissed if he entered a plea. In denying Petitioner's motion to withdraw his plea, the trial court held that dismissal of the Wisconsin charges was not part of the plea bargain. The trial court noted that, while the trial court and parties concluded that Petitioner's guilty plea in Michigan rendered it unlikely that Wisconsin authorities would pursue the assault charges, Michigan courts lacked the authority to compel dismissal of the Wisconsin charges as part of a plea agreement. Petitioner argues that this was an unreasonable determination of the facts in light of the evidence. The Court need not reach this issue because the official docket of the Kenosha County Circuit Court in Wisconsin shows that the assault charges against Petitioner were dismissed on the prosecutor's motion on August 3, 2009. *See Wisconsin v. Westerfield*, No. 2005CF000735 (Kenosha Cty. Cir. Ct. Aug. 3, 2009).

Finally, Petitioner argues that his plea was coerced because the trial court improperly participated in plea negotiations and threatened a higher sentence if Petitioner proceeded to trial. On September 27, 2006, the trial court placed on the record a plea

11

offer which would allow Petitioner to plead no contest to second-degree murder in exchange for dismissal of the open murder, felony murder, and third habitual offender charges. In explaining the plea offer, the trial court advised Petitioner that if he proceeded to trial and was convicted of second-degree murder he would face a substantially greater sentence because he would be sentenced as a third habitual offender. After Petitioner rejected the plea, the trial court advised Petitioner that this would be the last opportunity for plea bargaining and that, if he proceeded to trial, he faced mandatory life imprisonment. On December 21, 2006, one week before Petitioner agreed to enter a plea, the trial court revisited the plea offer. The trial court stated:

> First of all, there was some indication at our last session that there had been an outstanding offer made in this case, and I thought that we ought to clarify what that is exactly and ascertain Mr. Westerfield's preference in that connection. We all know that if Mr. Westerfield is convicted of murder in the first degree either by way of a felony murder or otherwise, that he faces mandatory life in prison without parole, and in Michigan, that means exactly that. We even have a geriatrics prison down in Coldwater where the people that are in their 70's and 80's serve out their lives on these sentences. And if there's some chance that Mr. Westerfield might have an opportunity to obviate that with an earlier release through a plea agreement, it seems to me it's something that should be seriously explored.

Tr., 12/21/06 at 3-4.

The trial court informed Petitioner that if the Wisconsin charges were not dismissed there was a possibility he would face a consecutive sentence in Wisconsin. The trial court further informed Petitioner as follows:

> [I]f you want to go to trial, you should definitely go to trial if you think you're innocent, if you didn't kill this man or whatever your theory is. All

> I'm saying is that the consequences of a conviction are extremely severe and are essentially carved in stone. If you go down on the murder-one count, there's nothing anybody can do about it and you will be incarcerated for the rest of your days. This allows you the potential of actually getting out of prison at some point and is, therefore, a serious consideration. And I know you weren't thinking about pleading guilty to a murder charge, and, again, if you don't want to, you shouldn't, but you should be aware that there are serious consequences if this goes badly for you, and based on our prior hearings in this case, it occurs to me that it very well might. I mean there's some fairly damning evidence that is likely to come into play here, and having been in this business for a few years, I know how juries are likely to react. So I think the – I think the case is strong enough that an offer of this sort should be given serious consideration.

*Id.* at 8-9.

The trial court denied this claim in its order denying Petitioner's motion for relief from judgment, stating:

> *Citing to People v Killebrew*, 416 Mich. 189, 209-210; 330 N.W.2d 834 (1982), *People v Cobbs*, 443 Mich. 276, 283; 505 N.W.2d 208, and excerpts of a transcript of a motion hearing that took place on December 21, 2006,[ ] Defendant argues his plea was coerced and involuntarily made. Defendant's contentions are without merit. Upon review of [the] transcript at issue, it is clear that this Court was (1) attempting to "tie up loose ends" prior to trial by determining whether the plea bargain, which was under consideration, would be accepted or rejected by Defendant; and (2) ensuring that Defendant's decision on whether to accept or reject the plea was done with knowledge of the consequences of his actions. [ ] At the December 21, 2006, hearing Defendant indicated that he had been fully informed of the situation regarding the acceptance or rejection of the plea offer, but that he was unwilling to accept the terms of the plea offer that had been presented. [ ] It is also important to note that Defendant did not plead no contest until December 28, 2006, which was a week after the alleged coercive activity. At the time of the hearing, Defendant indicated in open court that it was his own free choice to enter the plea; that no one had promised him anything to make him to plead; and that he had not been threatened or coerced into entering a plea. [ ]

13

*People v. Westerfield*, No. 06-02695-FC, Order Regarding Defendant's Motion for Relief from Judgment, slip op. at 2-3.

Federal Rule of Criminal Procedure 11(e) establishes standards for plea agreement procedures including prohibiting the court from participating in any discussions between the parties concerning a plea agreement. However, state courts are not required to follow the procedures set forth in Fed. R. Crim. P. 11, and the rule does not establish a constitutional requirement. *Desmyther v. Bouchard*, 108 F. App'x 364, 366 (6th Cir. 2004). Thus, on habeas review, a federal court examines a state judge's participation in plea negotiations only to determine whether the judge's actions violate due process. *Id.* at 366-67. If the defendant understood the charges against him, the consequences of a plea and voluntarily pleads guilty, there is no due process violation. *Id.* This Court examines the trial court's alleged involvement in plea negotiations to determine whether it violates due process concerns or Petitioner's right to a fair trial, not to determine whether the trial court complied with Fed. R. Crim. P. 11. *See Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980).

There is no indication in the record that the trial court threatened Petitioner with a harsher sentence. The court advised Petitioner it was his decision whether to enter a plea and that he was free to proceed to trial. The court provided Petitioner with the information that he needed to make an informed decision, including the far more severe penalty faced if Petitioner proceeded to trial and was convicted of first-degree murder.

14

Petitioner stated that: (1) he understood the plea agreement, (2) he understood the maximum penalty for his conviction, and (3) that he was freely and voluntarily pleading guilty. He also attested to the fact that no one had promised him anything beyond the terms of the plea agreement, and that no one had threatened him.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This Court concludes from the totality of the circumstances that Petitioner's plea was knowingly, freely, voluntarily and intelligently given and that his constitutional right to due process was not violated by the trial court's comments during the plea proceeding.

### B.  Ineffective Assistance of Counsel Claim

Next, Petitioner alleges that his trial attorney was ineffective in several respects. He argues that counsel: (i) failed to investigate his claim of self-defense; (ii) incorrectly advised him regarding the Wisconsin charges; and (3) miscalculated the sentencing guidelines.

Generally, to prevail on an ineffective assistance of counsel claim on habeas review, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

The two-part *Strickland* test applies to claims of ineffective assistance of counsel

based upon counsel's conduct prior to the entry of a plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). In the context of guilty pleas, the first half of the *Strickland* test is the same standard set forth above. *Id.* The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

First, Petitioner argues that counsel was ineffective in: failing to investigate his claim of self-defense and the possibility that the defense could show an intervening cause of death based on the theory that two individuals robbed the victim and left him to die after Petitioner stabbed him; and counseling him to plead guilty despite the considerable strength of his self-defense argument. Petitioner's argument in support of this claim undermines the merits of his claim. Petitioner details the many facts adduced at the preliminary examination and subsequent hearings which would have supported a claim of self-defense had Petitioner proceeded to trial. These facts were known to Petitioner prior to entering his plea. Petitioner argues that counsel should have investigated the self-defense option further instead of encouraging him to plead guilty, and should have investigated the possibility that two other men robbed the victim after Petitioner left the premises and then left the victim to die. Petitioner fails to identify specifically what

counsel should have done to further investigate the defense of self-defense. In denying Petitioner's motion to withdraw his plea, the trial court found no evidence that defense counsel failed to adequately investigate the case. The Court finds that the trial court's decision was not an unreasonable application of *Strickland* or *Hill*.

Second, Petitioner claims counsel was ineffective in giving him "false information" about the "nature and disposition of the Wisconsin charges." Petitioner fails specifically to identify what "false information" he received. The Court will not construct an argument for Petitioner. To the extent that his claim is that his attorney incorrectly informed him that the circumstances of the Wisconsin charges would not be admissible at trial, this claim is meritless. Even assuming that defense counsel advised Petitioner he did not believe the Wisconsin charges would be admitted, Petitioner learned that the charges would be admissible following a pre-trial hearing and counsel's mistaken belief they would not be did not prejudice Petitioner in any way.

Finally, Petitioner argues that defense counsel gave him misleading information about the sentencing guidelines because defense counsel advised him that the probation department had scored the guidelines at 225 to 375 months. At sentencing, defense counsel successfully argued that certain offense variables should be scored lower. Defense counsel's success in ultimately reducing the guidelines scoring to 162 to 270 months is not ineffective.

### C. Sentencing Claim

Finally, Petitioner argues that the scoring of certain offense variables rested upon inaccurate information in violation of his rights under the Due Process Clause.

A sentence violates due process if it is based on "misinformation of constitutional magnitude[,]" *Roberts v. United States*, 445 U.S. 552, 556 (1980), or "extensively and materially false" information, which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736 (1948). "*Townsend* and its progeny are generally viewed as having established a due process 'requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false.'" *Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007) (quoting *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974)).

During the sentencing hearing, defense counsel objected to the scoring of OV 1 and 3. He argued that 25 points should not be scored for OV 1 because, although the victim was stabbed, the stabbing was done in self-defense. Counsel further argued that no points could be scored for OV 3 because points were to be scored under that variable only if homicide was not the sentencing offense. Counsel further objected to the scoring of OV 5, which provides for the scoring of 15 points if a victim's family member suffers serious psychological injury which may require professional treatment. Defense counsel argued that there was no indication of any serious psychological injury. The trial court

denied the objections.

Petitioner disagrees with the trial court's scoring of these offense variables, but has not shown that the trial court relied on "extensively and materially false" information that he had no opportunity to correct. *Townsend*, 334 U.S. 736, 741 (1948). The trial court's determination of the facts was reasonable. 28 U.S.C. § 2254(d)(2). In addition, the sentence is within the statutory maximum penalty for second-degree murder (life). Mich. Comp. Laws § 750.317. Accordingly, no deprivation of due process occurred, and Petitioner is not entitled to habeas relief on the basis of this claim.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.

Therefore, the Court denies a certificate of appealability.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATE: August 15, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all Counsel of record via the Court's ECF Filing System.

                                        s/Bernadette M. Thebolt
                                        Case Manager